UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

        *v*.                    Case No. 10-CR-12

TRAVIS LUEDKE,

    Defendant.

**DEFENDANT'S SENTENCING MEMORANDUM**

**I.**

**INTRODUCTION**

Travis Luedke, by counsel, submits this sentencing memorandum in support of his position that he should be sentenced to 27-months imprisonment, which is a time-served sentence. Luedke argues that a variance from the guideline sentencing range of 57 to 71 months is required to achieve a sentence that is sufficient, but not greater than necessary, to achieve the purposes of sentencing established by 18 U.S.C. § 3553. Luedke maintains that the guideline sentencing range does not account for mitigating factors that are present in this case, as Luedke explains below.

1

## II.

## BACKGROUND

Luedke will be sentenced on April 27, 2012, for conspiring to commit wire fraud, contrary to 18 U.S.C. §§ 1343 and 1349. The base offense level is 7. Because the loss was $1,087,5000, the offense level is increased 16 under UNITED STATES SENTENCING GUIDELINES MANUAL § 2B1.1(b)(1). Luedke is also subject to a 2-point enhancement under U.S.S.G. § 2B1.1(b)(2)(A) because the offense involved 10 victims, and a 2-point enhancement because Luedke abused a position of private trust under U.S.S.G. § 3B1.3. Adjusting for accepting responsibility, and with a criminal history category II, Luedke's guideline sentencing range is 57 to 71 months.

## III.

## ARGUMENT

### 1. Nature and Circumstances of Offense

The guideline sentencing range does not entirely account for the nature and circumstances of the offense, which this Court must consider at sentencing under 18 U.S.C. § 3553(a)(1).

Luedke does not dispute the offense conduct portion of the presentence report, which describes the investment scheme promoted by Luedke and Michael Ramer. Essentially, Ramer and Luedke recruited ten people to invest in hedge funds that were to be invested in foreign-exchange markets. In fact, Luedke and Ramer did not invest the money in the hedge funds, but instead attempted to use the investors' money to make profits in other ventures.

2

But the guideline sentencing range does not account for the fact that Luedke entered into this scheme with honest intentions. Ramer sold Luedke on the efficacy of investing in the currency exchange market.[1] Ramer used Luedke for access to Luedke's clients from Luedke's mortgage refinancing business. Once Ramer sold Luedke on the idea, it became Luedke's job to sell the investments to his customers. When Luedke initially made the sales pitch to his clients, he believed that the money would in fact be used to invest in currency markets and that his clients would profit.

Luedke acknowledges that early into his relationship with Ramer, he knew the money the investors provided Luedke and Ramer was not going to be invested in currency markets. Instead, about half the money went to Kenneth Montluis. Montluis was an associate of Ramer's who was supposed to use the money as collateral for loans Ramer and Luedke were to use for additional investments. Those loans did not materialize and Ramer and Luedke, along with the victims of this offense, were left with nothing to show for the $500,000 given to Montluis.

The other half of the money was used to buy a mine in Mexico. Luedke believed that he would use the profits from the mine to pay back the investors, and provide them with a profit.

Luedke also acknowledges that using the investors' money for a mining operation was fraud because the mining investment was not revealed to the investors.

---

[1] Luedke's good-faith belief that Ramer's idea to invest in hedge funds specializing in currency markets was legitimate is credible given the investment climate of the time. Using hedge funds to invest in foreign currency exchanges became popular vehicle around 2003, "when institutional investors, especially hedge funds, speculated in foreign exchange markets in hopes of generating greater yields than were available on stagnant stock markets." Marc Levinson, *The Economist Guide To Financial Markets* 15 (4th ed. 2006).

3

But his intent was to at least pay back the investors, and hopefully earn a profit. Luedke's business naivete, however, worked against him and his investors. Ultimately, the mine did not return a profit and the investors' money was lost

But Luedke argues that his honest belief that the investors' money was to be used for a legitimate investment purpose when he sold the investors on the hedge fund idea, and his attempts to make the investors whole with the mining investment when it became clear that the hedge fund was a sham idea cooked up by Ramer, are mitigating factors not accounted for in the guideline sentencing range.

Further, Luedke submits that Montluis could have been charged with conspiring to defraud the victims in this case because half of the victims' money was turned over to Montluis with the belief by Luedke and Ramer that it would be used as collateral for loans. Instead, Montluis disappeared with the money. But because Montluis was not charged, and Ramer has yet to be convicted, Luedke will be responsible for the entire $1 million in restitution owed the victims, even though Montluis was the primary profiteer from the fraud. The guideline range therefore does not account for Luedke bearing the brunt of the obligation to repay the investors, even though he was not the primary beneficiary of the fraud.

The guideline range in this case is driven primarily by the amount of loss. But § 2B1.1 is a blunt instrument that only accounts for the amount of money that was lost. The guideline does not consider that Luedke initially believed the investments he was promoting were legitimate; he is therefore less culpable than a defendant who

4

intends from the beginning to engage in a scheme to defraud, even though the guideline range will not reflect Luedke's initially honest intentions.

2. **Guideline Overlap**

Luedke receives a two-point enhancement because ten victims were defrauded. The number of victims also led to the loss amount of over $1 million. Although the guidelines in this respect do not impermissibly double count because they address different harms, there is substantial overlap between the enhancement for the number of victims and the amount of loss. This is another factor not accounted for in the guideline sentencing range, and may provide basis for a variance. *United States v. Lauersen*, 348 F.3d 329, 343-344 (2nd Cir. 2003).

3. **Luedke's Cooperation With The Government**

Luedke has provided substantial assistance to the government. Luedke's sentencing was originally scheduled for February 10, 2011. The sentencing was adjourned because the government intended to file a motion for a downward departure based upon Luedke's substantial assistance to the government in its prosecution against Ramer, but the government was not in a position to file the motion until Ramer's case was resolved. Because Ramer's trial date has been adjourned twice at Ramer's request and no trial has been set, while Luedke remains incarcerated at the Waukesha County Jail, he is proceeding with sentencing without benefit of the government's substantial assistance motion.

5

Nevertheless, this Court may consider Luedke's cooperation with the government as a basis for a reduced sentence, even if the government has not made a 5K1.1. motion. *See United States v. Journey*, 2009 WL 2391532, at *3. (E.D. Wis. July 31, 2009). And the government's statement opposing Ramer's release from custody, which was filed on October 5, 2010, summarizes Luedke's substantial assistance from the government's perspective.

The indictment in this case was issued against Ramer and Luedke on February 2, 2010. Luedke was arrested on February 11, 2010. But the government acknowledges that Ramer's whereabouts were unknown until, "acting on information obtained from Luedke, law enforcement agents in Arizona arrested Ramer on August 19, 2010." (Govt's Statement Regarding Release or Detention at p. 2). Specifically, Luedke gave law enforcement Ramer's home address in Arizona.

In arguing that Ramer should be detained because the government's case against him was strong, the government said that "based on interviews that he has already provided, Luedke will testify that he and Ramer executed the scheme set forth above. Luedke's account is compelling not only because it is corroborated by the documentary and witness testimony summarized above, but also because it constitutes an 'inside' account in which he implicates himself as well as Ramer." (Govt's Statement at p. 5). In addition to Luedke's debrief with the government in which he implicated himself and Ramer in the fraud, Luedke provided law enforcement access to his e-mail account that included incriminating correspondence between him and Ramer. This

6

evidence would not have been available to the government without Luedke's cooperation.

Finally, the government argued that Ramer was a risk of flight because he expressed to Luedke his plan to flee to Mexico if an indictment was issued, and was a danger to the community because he kept a stockpile of weapons at his home. This information was also not available to the government until it gained Luedke's cooperation.

Ramer was released from custody. But Luedke remains available to testify against Ramer if he proceeds to trial. Meanwhile, Luedke's presentencing incarceration at the Waukesha County Jail was extended over one year while he awaited Ramer's case to resolve.

4. **Presentencing Incarceration**

A defendant's extended confinement in a local jail may justify a variance from the guideline sentencing range. *United States v. Salem*, 2008 WL 1751369, at *4 (E.D. Wis. April 11, 2008); s*ee also United States v. Turner*, 569 F.3d 637, 642 (7th Cir. 2009) (extraordinarily harsh conditions of confinement might in some cases justify a reduced sentence).

Luedke has been in custody since his arrest on February 11, 2010. Luedke has been incarcerated at the Waukesha County Jail since March 4, 2010. The Waukesha County Jail is equipped to serve as a holding facility while defendants await trial and sentencing; the jail is not intended as a long-term place of incarceration. As a result, few

7

programs are offered, little recreational opportunities are available, and Luedke has literally not been outside, other than brief trips to the Federal Courthouse for court appearances and debriefs, in over two years.  Because Luedke's wife and four children are in Texas, and his mother lives in Washington – and no one could afford to travel to Wisconsin --Luedke has had no personal visits since his incarceration at Waukesha.  In addition, Luedke could not attend his father's funeral when he died this year because he was incarcerated.

As noted above, this delay in sentencing was not caused by Luedke; he pled guilty in October 2010 and was scheduled for sentencing in February 2011.  The delay caused by Ramer's adjournments has kept Luedke at the Waukesha County Jail.  This 26-month period of "hard time" is a factor not accounted for in the guideline sentencing range, and justifies a variance from the guideline range.

5. **Preindictment Delay**

When a delayed prosecution prejudices a defendant at sentencing, that factor can form the basis for a variance from a guideline sentencing range.  *See United States v. Saldana*, 109 F.3d 100, 104 (1st Cir. 1997).

Luedke was prejudice by the delay because he lost an opportunity to argue for a concurrent sentence, and he incurred additional criminal history points.

The conduct that formed the bases for the wire fraud indictment occurred in 2004 and 2005, but Luedke was not indicted until February 2, 2010.  Meanwhile, Luedke was found with marijuana in January 2009.  He was convicted of that offense on January 29, 2009, in the United States District Court for the District of Arizona and

8

received a three-month sentence. Luedke therefore lost an opportunity at the sentencing hearing in Arizona to argue that his sentence for the marijuana conviction should run concurrent to his sentence for the wire fraud conviction because the wire fraud indictment had not been issued. Although Luedke received a short sentence, he maintains that the preindictment delay justifies some consideration by this Court when considering the appropriate sentence.

Further, this offense resulted in Luedke receiving two criminal history points for conduct that occurred after the offense for which this Court will sentence him, which raises Luedke's criminal history category from I to II.

### 6. **Post-Offense Rehabilitative Efforts**

When considering at sentencing the history and characteristics of the defendant as required by 18 U.S.C. § 3553(a), a relevant factor is post-offense rehabilitative efforts. Luedke has used his time in jail to write six science-fiction novels, which he believes he can self-publish when he is released. Luedke hopes that the productive use of his time while he has been incarcerated will allow him to pay restitution to the victims, in addition to providing income for his family. And this Court recognizes the need to make restitution to victims is better done in the community than in prison, and is a factor the Court should consider at sentencing. 18 U.S.C. § 3553(a)(2)(D), *United States v. Bandy*, 2008 WL 191625, Case No. 06-Cr-257, *3 (E.D. Wis. Jan. 22, 2008).

### 7. **Specific Deterrence**

Luedke has never served more than 90 days in custody prior to his incarceration for this case. A 27-month sentence is therefore adequate to deter Luedke from committing any additional offenses.

Luedke also believes that his stable family life shows that a 27-month sentence is sufficient to deter Luedke from committing further crimes. As noted above, Luedke has a wife and four children with whom he lives –ranging in ages from 10 to 14. He also has two older teenage children from a prior relationship. Luedke will return to his wife and four children when he is released from custody. In other words, Luedke has a lot to lose if he commits another offense.

## IV.

## CONCLUSION

Luedke asks the Court to impose a 27-month sentence, which he believes is sufficient, but not greater than necessary, to achieve the purpose of sentencing.

Dated at Milwaukee, Wisconsin, April 23, 2012.

Respectfully submitted,

**/s/ Brian P. Mullins**
Brian P. Mullins, Bar # 1026891
Counsel for Travis Luedke
2524 North Lake Drive, # 20
Milwaukee, WI 53211
Tel: 414-731-1754
brianmullins1213@gmail.com

10