# Thomas Wilmouth

7 N. Pinckney, Suite 50 D
Madison, Wisconsin 53703

T 608 835-6390
F 608-835-6358
tom.wilmouth@gmail.com

April 21, 2012

Hon. Lynn S. Adelman
U. S. District Court Judge
Rom. 364, U.S. Courthouse
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202

RE:   *United States v. Travis Luedke*

Dear Judge Adelman:

Before leaving the local federal defender's office, I represented Mr. Luedke in this pending fraud case, which I understand is before the Court for sentencing on April 27, 2012.  I was his counsel at the time he entered a guilty plea. In light of my substantial involvement in the case, the permission of Mr. Luedke's current counsel, and my unavailability on the date of sentencing, I ask leave of the Court to submit these written comments that the Court may consider relevant to sentencing.

It took a substantial investment of time for Mr. Luedke to accept responsibility for his involvement in the offense conduct.  I have heard other lawyers talk about a "catharsis" that a defendant- or even witnesses, undergo during the course of a criminal case such that the person begins to grasp the reality of the case situation.  After hours of review of the case facts with Mr. Luedke and his personal history which involved multiple candid challenges to his thought processes in the investment business in

which he was involved with his co-defendant, Mr. Luedke admitted that there were multiple deceptive representations made to investors that cost these persons considerable funds. From the date of that catharsis forward, and I think not for the sole purpose of improving his personal status in this criminal case against him, Mr. Luedke began to think differently and recognize how serious his conduct was.

While the delay in his acceptance of responsibility may seem an aggravating factor, I offer to the Court that it was demonstrative of a continuing "brain wash" effect that his co-defendant/ business partner had upon him. In a sense, much like the investor victims in this fraud case, Luedke was also charmed as an "investor" in the thinkings of his co-defendant to the point of actually believing in the prosperous merits of the investment ideas he was selling. There certainly came a point where there is no excuse in the form of being considered himself a victim of his co-defendant's historical schemes, but I think the Court should know that while Mr. Luedke should not qualify for a type of Guideline role in the offense type of adjustment, he was to a certain degree under the spell of his co-defendant in bringing himself and others to wealth. He was bright and savvy enough, however, to withdraw from the recognized scheme at some crucial point and elected not to do so for personal gain, and the sentence must consider that.

I recall working diligently to secure Mr. Luedke's pretrial release on bond conditions early on in the defense of his case. The defense put together a persuasive bond proposal, considering the statutory considerations. The government and Magistrate Judge Gorence would have none of it, perhaps providing an insight to Mr. Luedke of the seriousness of his conduct and a path to his catharsis  The Court is well aware that Mr. Luedke has atypically spent a considerable amount of time in the confines of the Waukesha County Jail pending sentencing. I will leave to attorney

Hon. Lynn S. Adelman
April 21, 2012
Page 3

Mullins any argument that such length of time in the county jail may affect sentencing. What I find interesting about Mr. Luedke's lengthy local confinement is something entirely different. It has been occasioned by the repeated delays in the trial and or the disposition of the case against his co-defendant, against whom Mr. Luedke will testify on behalf of the government. And during this lengthy delay, while Luke has been in custody in rough conditions of a local jail, his co-defendant remains free on bond. This seems to me to be a microcosm of the relationship between and relative roles of the defendants during their fraudulent scheme, *i.e.* the mastermind directs or influences the activities of the pair, and if it were up to the mastermind, his apostle, protege, or what have you would alone face the music.

Returning to the cathartic swing in this defendant's case perspective, I cannot wipe from my memory Mr. Luedke sitting at a desk in front of a computer in the office of the United States Postal Inspector and assisting the case investigators in locating the reclusive codefendant for his apprehension, and finding on various e-mail accounts documents relevant to the fraud investigation at the behest of the investigators. Luedke became a follower then not of his co-defendant, but of the government.

I have no doubt Mr. Luedke will continue in his efforts to cooperate with the government in the resolution of the case against his co-defendant, and that he will do so in or out of the physical custody of the government. That is relevant to the question of whether the Court will impose a sentence beyond time-served in this case. Obviously, whatever sentence the Court imposes will include a period of supervised release, which will provide the government some measure of confidence in Luedke's ongoing cooperation. His co-defendant assuredly cannot move to continue his day of reckoning beyond the period of supervised release imposed upon Mr. Luedke.

It would not surprise me if the public believed criminal defense lawyers in fraud cases rarely, if ever, consider the impact of their clients' conduct on the lives of victims. A lawyer would have to be heartless to not consider such impact in this case. As I recall it, people were financially assaulted several degrees beyond which I could personal accept in my own financial circumstances. And my angst agains the likes of Mr. Luedke, follower or otherwise, would be beyond measure. I recall one victim was financially bankrupted just before her death. And if the sentence to be imposed considered that fact alone, little mercy could be found for Mr. Luedke.

Criminal defense lawyers are not under in obligation or in the business of proving anything to the public in a given case. But that assertion does not mean that it should be anything but crystal clear that Travis Luedke should spend the rest of his life- to whatever degree humanly possible, to make restitution to the victims or estate(s). A maximum period of supervised release during which Mr. Luke lives a meager lifestyle like that he caused his victims to live, and thereafter a restitution judgment converted to a civil judgment, will preclude him from coming close to living as he dreamed to live when these investment schemes were hatched. Travis Luedke dreamed to be a financial success, an enviable goal. He has forfeited that goal and must live as modest as possible until he makes his victims whole. This is not a bright future for him, but substantially brighter than additional time in prison which I think his catharsis should avoid.

Thank you.

Sincerely,

/s Thomas G. Wilmouth
Thomas G. Wilmouth